**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:16 po 04-02
1:16 po 04-03**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Vs.** | ) | **ORDER** |
| | ) | |
| | ) | |
| **2) JAMES HARRISON JENKINS, and** | ) | |
| **3) TERRY RONALD JENKINS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

     **THIS MATTER** came before the undersigned on January 11, 2017, pursuant to identical Motions to Dismiss (#13) and (#14) filed by Defendants. The Government responded to the Motions to Dismiss with identical Responses (#20) to which Defendant's each filed an identical Reply (#27) and (#28). At the call of this matter for hearing, it appeared that Defendant James Harrison Jenkins was present with his attorney Benjamin R. Olinger, Jr., and Defendant Terry Ronald Jenkins was present and represented by his attorney Russell L. McLean, III. The Government was present through AUSA Richard Edwards. From the briefs of Defendants and the Government, from the records in this cause, and based on the arguments of counsel for Defendants and the Government, the Court makes the following findings.

     **I. Findings.** Defendants, James Harrison Jenkins and Terry Ronald Jenkins

and two other defendants, that being Clay Douglas Bryson and David Eric Williams, were charged on September 16, 2016, in a bill of information (#1). In count one, all defendants were charged with hunting bear within a bear sanctuary, in violation of 15A NCAC 10B.0201 and 15A NCAC 10B.0202(c) and in violation of 36 C.F.R. § 261.8(a). In count two, Defendants Terry Ronald Jenkins and David Eric Williams were charged with hunting bear without a license, in violation of NCGS § 113-270.1B and 36 C.F.R. § 261.8(a).

An initial appearance hearing was held for all four defendants on September 22, 2016, and scheduling orders were entered on September 22, 2016, and September 26, 2016 (#12). Defendants James Harrison Jenkins and Terry Ronald Jenkins filed Motions to Dismiss on October 8, 2016 (#13) and (#14). Defendants Bryson and Williams did not file pretrial motions. In the Motions to Dismiss, Defendants each state that in 1971 the State of North Carolina through its agency, the North Carolina Wildlife Resources Commission, established 28 bear sanctuaries, one of which is the Wayah bear sanctuary located in Macon County, NC. The State of North Carolina prohibits bear hunting in posted bear sanctuaries. The North Carolina Wildlife Resources Commission published in North Carolina Game Lands 1972-73 hunting maps showing the location and boundary of the Wayah bear sanctuary, but the map did not contain a metes and bounds description. In 1973, North Carolina enacted The North Carolina Administrative Procedures Act, now N.C.G.S. §§ 150B-

1 through 150B-52, and included in this enactment 15A NCAC 10B.0202(c), which prohibited bear hunting in posted bear sanctuaries, including the Wayah bear sanctuary. In the enactment, a metes and bounds description of the sanctuary was not provided. Defendants contend that due to the failure of the North Carolina General Assembly or the North Carolina Wildlife Resources Commission to set forth the boundaries of the Wayah bear sanctuary in the form of a metes and bounds description, the charges against Defendants Jenkins should be dismissed.

In the alternative, Defendants Jenkins contend that due to the failure of the North Carolina Administrative Procedures Act to include as a rule a standard for posting the boundary of the Wayah bear sanctuary, the charges against each defendant should be dismissed. Attached to Defendants' briefs as "Exhibit D", is an email dated September 19, 2016, to Mr. McLean from Issac J. Harrold, Lands Program Coordinator for the North Carolina Wildlife Resources Commission. This email states as follows:

> Mr. McLean.
> Following is the standard language that we use when developing external contracts for posting/maintaining signs. The same protocol is used by our internal staff as well, and includes signing of any designated game land boundary (i.e. game land, archery zone, safety zone, restricted zone, bear sanctuary, etc.).
>
> A. All damaged or illegible game land signs found while conducting work shall be removed and replaced.
> B. Place signs on living trees as high as can be conveniently reached so as to prevent removal.
> C. Place signs along the boundary line so that they face out

from the areas, so as to be seen by persons approaching the area.

D. Place signs on opposing sides of interior state maintained roads that bisect Game Land property.

E. Place signs at a spacing of approximately 200 feet (~25 per mile) and in addition:

> Place a sign on each side of a road (including old road beds firelines, and gates) where a road crosses the boundary line by sighting the line and between existing markers if necessary.

> Place a sign wherever a foot trail crosses the boundary line by sighting the line and between existing markers if necessary.

> Place a sign wherever a creek crosses the boundary line (if large creek, place a sign on each side by sighting the line and between existing markers if necessary).

> Place a sign on the crest of each ridge that the boundary line crosses by sighting the line and between existing markers if necessary.

> Place a sign before and after areas of dense vegetation that impairs visibility of the boundary line.

> All corners and angle changes greater than 30 degrees should be double-signed with each sign aligning parallel to the direction of the corresponding boundary lines meeting at that corner.

F. Aluminum nails should be driven in approximately ½ of the nail length to allow for tree growth. Two (2) nails should be used per sign, one at the top and one at the bottom corner only.

G. Chopping is required around signed trees so that it is visible from either direction at least 10 feet.

To the best of my knowledge, these specifications do not exist in rule.

Regards,

Isaac J. Harrold
Lands Program Coordinator

Defendants argue that as a result of the failure of 15A NCAC 10B.0202(c) to include as a rule a standard for "posting" of the boundary for the Wayah bear sanctuary, the charges against Defendants should be dismissed.

In the Government's Opposition to the Motion to Dismiss (#20), the Government points out that this proceeding is not the proper forum for Defendants to challenge the validity of a state agency regulation and cites to the provisions of North Carolina statutory law that require a party to file a petition with the State of North Carolina office of Administrative Hearings. N.C.G.S. § 150B-23. The Government further argues that bear sanctuaries were created in North Carolina prior to the enactment by the State of North Carolina of the Administrative Procedures Act and the North Carolina Administrative Code, which have been in effect for almost 40 years. N.C.G.S. § 150B-21.8. Additionally, the Government points out N.C.G.S. § 150B-21.9(a1) which states that: "Entry of a rule in the North Carolina Administrative Code after review by the Commission creates a rebuttable presumption that the rule was adopted in accordance with Part 2 of this Article." Finally, the Government contends the boundaries of the bear sanctuary and, particularly Wayah bear sanctuary, are well established. The Government introduced into evidence as Government's "Exhibits 1 & 2" maps of the Wayah bear sanctuary which can be located upon the internet by use of a computer. Located

upon Government's "Exhibit 1" is the following language:

**GAME LANDS**

<u>These maps have been compiled by the North Carolina Wildlife
Resources Commission as an aid to hunters, trappers and fishermen
who use the two million acres of North Carolina game lands</u>.   Tract
boundaries as pictured in these maps are not precise but are
approximations of actual locations. <u>Game lands users should identify
boundaries on the ground before hunting, trapping or fishing</u>.   <u>Game
lands are posted with signs to aid sportsmen in locating each tract</u>.   Be
sure to refer to Hunting/Trapping regulations to identify regulations and
exceptions specific to game lands.

**Two ways to view Game Land Maps on-line:**

**1.   Interactive Game Land Map**          **2.   View and Download**
**(http://ncpaws.org/wrcmapbook/)**              **Game Land Map PDFs**

Finally, the Government contends posting of the boundaries by use of signs

and markers on the ground or in trees is a well-recognized and well-understood

method of posting and is well understood by hunters and this method is sufficient to

identify to hunters the boundaries of any bear sanctuary.

**II. Analysis.**    Rule 12 of the Federal Rules of Criminal Procedures provides

as follows:

**(b)   Pretrial Motions**.

(1)   **In General.**   A party may raise by pretrial motion any defense,
objection, or request that the court can determine without a trial
on the merits.    Rule 47 applies to a pretrial motion.

(2)   **Motions that May be Made at Any Time.**    A motion that the
court lacks jurisdiction may be made at any time while the case
is pending.

(3) **Motions That Must be Made before Trial.** The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:

    (A) a defect in instituting the prosecution, including:
        (i) improper venue;
        (ii) preindictment delay;
        (iii) a violation of the constitutional right to a speedy trial;
        (iv) selective or vindictive prosecution; and
        (v) an error in the grand-jury proceeding or preliminary hearing;

    (B) a defect in the indictment or information, including:
        (i) joining two or more offenses in the same count (duplicity);
        (ii) charging the same offense in more than one count (multiplicity);
        (iii) lack of specificity;
        (iv) improper joinder; and
        (v) failure to state an offense;
    (C) suppression of evidence;

    (D) severance of charges or defendants under Rule 14; and

    (E) discovery under Rule 16.

In the pleadings filed by Defendants (#13) (#14) (#27) and (#28), there is not included any statement that identifies the legal basis for Defendants' identical Motions to Dismiss. During argument, the Court asked Mr. McLean and Mr. Olinger to state the grounds for their motions and to identify any specific rule of criminal procedure, statute, case, or other rule upon which the Motions to Dismiss

7

were based. Neither Mr. McLean nor Mr. Olinger identified the grounds or the legal basis for their motions, except at the end of the arguments, Mr. McLean mentioned a lack of jurisdiction of the court.

The undersigned will address, first of all, the issue of lack of jurisdiction of the Court. It appears the allegations in the bill of information allege, "special territorial jurisdiction of the United States, that is, the Nantahala National Forest, in Macon County, within the Western District of North Carolina." There has been no argument from any party that the alleged acts of Defendants did not occur within that physical area. Further, Defendants have admitted the North Carolina Administrative Code was properly enacted and has been enforced for almost 40 years. The specific portion of the Administrative Code, that being 15A NCAC 10B.0202, was adopted after review by the Rules Review Commission and has been reviewed by that same Commission on multiple times. There has been no showing that Defendants filed a petition with the North Carolina Office of Administrative Hearings stating any objection to the Rule. N.C.G.S. § 150B-21.9(a1) creates a presumption of validity and there has been no evidence that this Rule is invalid. Finally, at the end of his argument, Mr. McLean conceded that jurisdiction did exist in this matter.

Although the Defendants have not identified any other grounds as the basis for their motions, the Court will, out of an abundance of caution, address their

concerns about whether or not there should have been a metes and bounds description of the Wayah bear sanctuary placed in the North Carolina Administrative Code and whether or not, as a part of the rule making process, a standard for posting.

The North Carolina Wildlife Resources Commission created twenty-eight bear sanctuaries in 1971 (#20-1, p. 6.) and then in 1973 North Carolina again approved the creation of the sanctuaries by approval of 15A NCAC 10B.0202, which provided there are no open seasons for the hunting of bear in posted bear sanctuaries. 15A NCAC 10B.0202(c). Defendants argue that such legislation is not sufficient. Defendants contend the boundaries of the bear sanctuaries should be described by metes and bounds description provided to all hunters or, in the alternative, the standards for marking the boundary should have been made as a part of the rule making process. The Government contends that such a specific description or marking standard unnecessary.

The Court finds that a requirement of a metes and bounds description is unnecessary. The Wayah bear sanctuary covers 14,831 acres. A metes and bounds description of such a large tract of land could not be understood by the average hunter. Moreover, a holding from this Court requiring a metes and bounds description would invalidate many of the hunting and fishing regulations in North Carolina. A metes and bounds description of a bear sanctuary would be confusing, expensive, and injurious to the protection of wildlife.

The arguments of Defendants that the terms of posting should be placed in the North Carolina Administrative Code is simply unpersuasive. 15A NCAC 10B.0202(c) states in regard to bear hunting: "There will be no open season in those parts of counties included in the following posted bear sanctuaries." In Black's Law Dictionary "posting" is defined as a method of substituted service of process by displaying the process in a prominent place or the act of providing legal notice." <u>Black's Seventh Edition at p. 1187</u>. The standards applied by the North Carolina Wildlife Resources Commission (#14 Exhibit "D", pp. 1-1.) provide a detailed plan for posting and signage, which any observant hunter could easily recognize. The standards of posting and signage are required for every 200 <u>feet</u>. The undersigned has compared these standards with the statutory requirement for posting by a private land owner as is set forth in N.C.G.S. § 14-159.7 to prohibit hunting on private property. N.C.G.S. § 14-159.7 only requires signs to be spaced not more than 200 <u>yards</u> apart or painted lines no more than 100 <u>yards</u> apart. Additional requirements for signage at roads and creeks are required by the North Carolina Wildlife Resources Commission while none are required in regard to private property. Additionally, the North Carolina Wildlife Resources Commission publishes maps of bear sanctuaries which are readily available to the public to assist hunters in complying with the hunting laws and regulations. The undersigned finds to require that the standards as applied by the North Carolina

Wildlife Resources Commission be stated in an Administrative Code Ruling is simply unnecessary. As stated previously, 15A NCAC 10B.0202 has been reviewed and adopted by the North Carolina Legislature and there has been no showing the Defendants or anyone have ever filed any objection to the Rule.

Although not argued by Defendants, and to give Defendants every benefit of the doubt, the undersigned has examined this matter to see if 15A NCAC 10B.0202 is void for vagueness.

> The **void-for-vagueness** doctrine requires that penal statutes define crimes so that ordinary people can understand the conduct prohibited and so that arbitrary and discriminatory enforcement is not encourages. United States v. Klecker, 348 F.3d 69, 71 (4th Cir. 2003) (quoting United States v. McLamb, 985 F.2d 1284, 1291(4th Cir. 1993)): see also United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed2d 650 (2008) ("A conviction is void for vagueness if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.") "While laws that regulate expression are subject to 'stricter standards,' 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" Imaginary Images, Inc. v. Evans, 612 F.3d 736, 749 (4th Cir. 2010). Because there is no evidence of any actual inconsistency in the statute as applied, plaintiff must show that "the law is impermissibly vague in all of its applications." Vill. Of Hoffman Estates v. Flipside, 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

> Preston v. Leake, 743 F. Supp. 2d 501 (E.D.N.C. 2010).

After examining 15A NCAC 10B.0202(c), it appears that ordinary people can easily understand the conduct prohibited, particularly in light of the maps and the on-the-ground and in-the-tree signage that the North Carolina Wildlife Commission

requires. It does not appear there is any chance there could be arbitrary or discriminatory enforcement of the Rule and the Rule, is not void for vagueness.

Finally, in regard to count two, the Defendant Terry Ronald Jenkins, is charged with hunting bear without a license in violation of N.C.G.S. § 113-270.1B and 36 C.F.R. § 261.8(a). The arguments of Defendants as to the description of the property do not apply to this charge and show no justification for the Court to dismiss the charges of bear hunting without a license against this Defendant. The issue in this case is whether or not, at the trial of this matter, the Government can prove that the Wayah bear sanctuary was in fact "posted" and whether or not Defendants were hunting bear within the boundary of the bear sanctuary. "Posting" can be proved by the Government by showing that the North Carolina Wildlife Resources Commission has complied with their own internal standard for posting. Whether or not the Government can prove such will depend upon the evidence presented and cannot be determined without a trial on the merits. The Court points out however, that proof of "posting" would not be required in regard to the charges against Defendant Terry Ronald Jenkins for hunting bear without a license. That would require evidence which would show beyond a reasonable doubt that Defendant was bear hunting without a license in lands under the ownership or control of the United States and without a license, in violation of North Carolina law.

The undersigned has examined Rule 12(b) of the Federal Rules of Criminal

Procedure and cannot find that the motions of the Defendants set forth any grounds as required by Rule 12(b)(3).   The Court finds that the Court has jurisdiction as set forth under Rule 12(b)(2).   As a result of the foregoing, the undersigned has determined to enter an order denying Motions to Dismiss (#13) and (#14) of Defendants.

## ORDER

**IT IS, THEREFORE**, **ORDERED** that the Motions to Dismiss (#13) and (#14) of Defendants are **DENIED.**

Signed: January 23, 2017

Dennis L. Howell
United States Magistrate Judge